NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES C. RICKETTI, D.P.M., | |
| | Civ. No. 13-6804 |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| SHAWN P. BARRY, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

This matter comes before the Court upon the Motion of Defendants Shawn P. Barry and RestorixHealth, Inc. (collectively "Defendants") to Dismiss the Complaint of Plaintiff James C. Ricketti. (Doc. No. 21). Plaintiff opposes. (Doc. No. 22). The Court has decided the Motion based on the parties' written submissions and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons below, Defendants' Motion will be granted in part and denied in part.

BACKGROUND

Plaintiff's action alleges breach of contract, conversion, tortious interference, vicarious liability, and related claims. Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[1]

Plaintiff is a podiatrist in New Jersey. He operates his own practice and also treated patients at a wound care center managed by Defendant Barry on behalf of Defendant

---

[1] Plaintiff is a citizen of New Jersey. Defendant Barry is a citizen of Pennsylvania. Defendant RestorixHealth, Inc. is incorporated in Nevada, with a principal place of business in New York. In addition, the parties have not contested that the amount in controversy exceeds $75,000.

1

RestorixHealth.  In 2008 Plaintiff hired Dr. Michael Plishchuk as an associate and often sent him to treat patients at the wound care center.  Plaintiff claims that after Dr. Plishchuk was fired in July 2012, Dr. Plishchuk continued to rehabilitate Plaintiff's patients at the wound care center, thus depriving Plaintiff of revenue to which he was entitled.  In addition, Plaintiff asserts that Barry no longer allowed Plaintiff to treat patients at the wound care center.

In July 2012 Plaintiff sued Dr. Plishchuk in New Jersey state court for breach of contract, breach of the covenant of good faith and fair dealing, tortious interference, breach of the duty of loyalty, and conversion.  Although the suit sought redress for Dr. Plishchuk's alleged diversion of Plaintiff's patients from the wound care center, Plaintiff did not join Barry or RestorixHealth in the action, nor did he inform the state court that they should be joined.  Ultimately after court ordered mediation, Plaintiff and Dr. Plishchuk settled in May 2013.

Subsequently in September 2013 Plaintiff filed the present suit against Defendants, asserting six counts: tortious interference, vicarious liability, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion of good will, and conversion of funds.  Because Plaintiff's second suit stemmed from the same factual circumstances and alleged the same causes of action as his first suit, Defendants claimed that New Jersey's Entire Controversy Doctrine barred the second suit and sought dismissal under Federal Rule of Civil Procedure 12(b)(6).  This Court granted Defendants' Motion on the basis of the Entire Controversy Doctrine and did not reach Defendants' other arguments for dismissal.  Plaintiff appealed, and the Third Circuit vacated and remanded this Court's ruling, finding that the Court did not apply the current legal standard under New Jersey Rule of Court 4:5-1(b)(2).  Upon remand, Defendants have re-filed their Motion to Dismiss, again asserting preclusion under the New Jersey Entire Controversy Doctrine and failure to satisfy the pleading standards.

DISCUSSION

   A.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, and the defendant bears the burden of showing that no claim has been presented. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005). When assessing a Rule 12(b)(6) motion, district courts conduct a three-part analysis, considering only the Complaint and its attached exhibits and matters of public record. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff but may disregard legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Third, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Bare allegations of entitlement to relief and demonstrations of a "mere possibility of misconduct" are insufficient; rather, the facts must allow a court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id*. at 210–11 (quoting *Iqbal*, 556 U.S. at 678–79).

However, the New Jersey Entire Controversy Doctrine is an affirmative defense. Thus, unless its elements appear on the face of the complaint, it is not a basis for dismissal under Rule 12(b)(6). *Rycoline Prods. Inc., v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). If the elements of the defense are not apparent on the face of the complaint, the district court has two options. *Id*. It may deny the motion without prejudice and with leave for defendants to renew

their motion as one for summary judgment or the district court may convert the motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). *Id.* Summary judgment should be granted if "the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir. 1983).

B. Analysis

Here, Defendants assert that the Complaint must be dismissed on the basis of New Jersey's Entire Controversy Doctrine and Plaintiff's failure to adequately plead all elements of his claims. However, because the Entire Controversy Doctrine does not appear on the face of the Complaint, it is evaluated under the summary judgment standard. The Court will therefore construe Defendants' Motion to Dismiss as two successive motions: first a motion for summary judgment[2] based on the Entire Controversy Doctrine, and second, if that motion is denied, then the Court will proceed to evaluate Defendants' remaining arguments under the Rule 12(b)(6) motion to dismiss.

---

[2] In order to convert a Rule 12(b)(6) motion into one for summary judgment under Rule 56, the Court must afford "all parties . . . a reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d). Here, the Third Circuit's Opinion explicitly noted that the Entire Controversy Doctrine must be assessed under the summary judgment standard on remand, and Defendants' Motion brief identifies the summary judgment standard as the applicable legal standard governing the Court's assessment of the Entire Controversy Doctrine. Thus, all parties had notice that the summary judgment standard applies and had a reasonable opportunity to present all relevant material under this standard.

*1. New Jersey's Entire Controversy Doctrine*

New Jersey's Entire Controversy Doctrine is an equitable preclusionary doctrine that "requires a litigant to present all aspects of a controversy in one legal proceeding." *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 354 N.J. Super. 229, 240 (App. Div. 2002). That is, related claims arising among related parties must be adjudicated together "rather than in separate, successive, fragmented, or piecemeal litigation" in order to ensure fairness to parties and conservation of judicial resources. *Kent Motor Cars Inc. v. Reynolds & Reynolds, Co.*, 207 N.J. 428, 443 (2011). The doctrine has evolved considerably over time and in its present form, the joinder of parties is governed by New Jersey Court Rule 4:5–1(b)(2), which requires parties to disclose the existence of any non-party who should be joined or who might have "potential liability to any party on the basis of the same transactional facts." *Id*. at 444 (quoting N.J. Ct. R. 4:5–1(b)(2)). This obligation attaches when each party files its first pleading and continues thereafter, as parties must file amended certifications if circumstances change. *Id*. at 445. If a party fails to properly disclose non-parties who should be joined, the court may impose any appropriate sanctions, including litigation costs and dismissal of the successive action. N.J. Ct. R. 4:5–1(b)(2). However, dismissal is a sanction of last resort that is only appropriate where "(1) the suit is a 'successive action'; (2) the plaintiff's failure to disclose the existence of other potentially liable parties in the earlier litigation was 'inexcusable'; and (3) the undisclosed parties' right to defend the successive action was 'substantially prejudiced' by their omission." *Kent*, 207 N.J. at 447; N.J. Ct. R. 4:5–1(b)(2). "The party seeking application of the entire controversy doctrine bears the burden of demonstrating inexcusable conduct and substantial prejudice." *Ctr. for Prof'l Adv. v. Mazzie*, 347 F. Supp. 2d 150, 157 (D.N.J. Dec. 9, 2004).

5

A suit is a successive action where the present claims arise out of the same transactions or occurrences as the previous lawsuit. *Beale v. Rubin & Rothman, LLC*, No. 08-4279 (JAG), 2009 WL 1916322, at *4 (D.N.J. June 29, 2009). Such related claims stemming from the same core set of facts must be asserted together in one proceeding under the Entire Controversy Doctrine. *Keltic Fin. Partners, LP v. Krovatic*, No. 05-4324 (JAP), 2007 WL 1038496, at *8 (D.N.J. Mar. 30, 2007). Claims are "related" if "parties . . . will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions." *Id*. "It is the commonality of facts . . . that control application of the entire controversy doctrine." *Id*.; *see also Hobart Bros.*, 354 N.J. Super. at 244 ("The essential consideration is whether 'distinct claims are aspects of a single larger controversy because they arise from interrelated facts.'").

The remaining two elements—inexcusable conduct and substantial prejudice—are interrelated, and to assess them courts have examined several non-exhaustive factors, including: (1) whether the undisclosed party is precluded from seeking recovery in a subsequent action; (2) whether a party so precluded can be alternatively compensated; (3) whether a party's failure to join/disclose a non-party was a strategic choice to thwart the assertion of a valid claim; (4) whether the failure to join/disclose was unreasonable under the circumstances; (5) whether a person not joined would have constructive knowledge of that action; (6) the extent to which judicial resources were employed in the prior action; and (7) whether a person not joined in the prior action may be unfairly hampered in its ability to mount a defense, e.g., due to loss of evidence or the running of the statute of limitations. *See Beale*, 2009 WL 1916322, at *3-4; *Mazzie*, 347 F. Supp. 2d at 156; *Hobart Bros.*, 354 N.J. Super. at 243.

Here, the present action is a successive suit. The factual circumstances alleged in the prior state court suit are the same as those alleged here, and both complaints assert the same common law causes of action. *See Ricketti v. Barry*, 775 F.3d 611, 612 (3d Cir. 2015). Indeed Plaintiff claims in both cases that he was deprived of revenue due to Dr. Plishchuk's continuing treatment of patients at the wound care center after being terminated by Plaintiff. Plaintiff had a continuing obligation under New Jersey Court Rule 4:5-1 to disclose the existence of RestorixHealth and Barry as non-parties who should be joined in the state action. Plaintiff failed to comply with these obligations, as he twice certified that no other parties should be joined. *Ricketti*, 775 F.3d at 612. Plaintiff was apparently aware of Barry and RestorixHealth's potential liability at the time he filed his action against Mr. Plishchuk since both disputes are based on the same factual background, and Plaintiff explicitly referenced the wound care center in his state court complaint. Plaintiff's failure to disclose or join Defendants in the prior suit was thus inexcusable.

However, harm to Defendants caused by not having been joined in the prior action does not rise to the level of substantial prejudice, meaning serious harm to a party's ability to maintain an adequate defense in a subsequent suit. *See Mazzie*, 347 F. Supp. 2d. at 156. Defendants claim that they are substantially prejudiced as a result of not being joined in the prior suit because of their inability to (1) participate in discovery and mediation in the first action, (2) participate in settlement discussions with all relevant parties, and (3) seek contribution from joint tortfeasor Dr. Plishchuk. (Doc. No. 21, Mot. Dismiss, at 13-16).

The Court is not persuaded by Defendants' claims. To the extent Defendants are harmed by their lack of access to discovery and mediation in the prior suit, they are free to conduct discovery, including deposing Dr. Plishchuk, and to seek mediation in this suit. Additionally,

7

even if Defendants are prejudiced by the inability to participate in settlement with all relevant parties and to seek contribution from joint tortfeasors, dismissal of a suit is the "ultimate sanction," appropriate only where "lesser sanctions are inadequate." *See Kent Motor Cars*, 207 N.J. at 447, 449 (finding no substantial prejudice where, although some evidence had been lost, the usual spoliation remedies were available). An inability to obtain contribution can be remedied by less harsh alternative measures; for example, a jury could assign a percentage of liability to Dr. Plishchuk, and the Court could then reduce a verdict against Defendants by such an amount. *See Verni v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160, 207 (App. Div. 2006) (explaining that "a non-settling defendant has the right to have a settling defendant's liability apportioned by the jury," and that although a settling defendant has no further liability, "the credit to the non-settling defendant survives.").

     Assessment of the other relevant factors also fails to demonstrate substantial prejudice to Defendants. Plaintiff filed the present suit against Defendants within the statute of limitations, and more importantly, there is no indication that access to any relevant evidence has been destroyed. *See Mazzie*, 347 F. Supp. 2d. at 156–58 (stating that "a party's access to relevant information is largely dispositive of the substantial prejudice issue," and finding no substantial prejudice where there was no loss of evidence and the statute of limitations had not expired). Although Plaintiff's failure to join Defendants in the previous suit is inexcusable, there is no indication that Plaintiff was seeking to gain any unfair litigation advantage. Also, Plaintiff's prior suit does not appear to have expended significant state judicial resources, as the suit against Dr. Plishchuk was settled less than a year after filing. *Cf. Beale*, 2009 WL 1916322, at *5 (finding a significant use of state judicial resources where the prior suit included appeals to the Appellate Division and the New Jersey Supreme Court); *Mazzie*, 347 F. Supp. 2d at 158 (finding

8

that "judicial resources were extensively employed" in the prior state action because the court decided "numerous claims on the merits").

Lastly, all of the cases Defendants rely on to support their assertions of substantial prejudice are distinguishable becuase they involve different factual circumstances. *See e.g.*, *Alvarez v. Borough of Hoboken*, 2013 WL 4236116, at *12, 14 (N.J. Super. Ct. App. Div. 2013) (finding substantial prejudice where (1) over five years had passed between the incident and the filing of the successive suit and (2) the court found "dilatory and manipulative conduct [by] plaintiff's attorney"); *Beale*, 2009 WL 1916322, at *5 (finding substantial prejudice where plaintiff's claims were meritless or untimely and the state had already expended significant judicial resources to adjudicate the prior state action); *Keltic*, 2007 WL 1038496 (successive suit was a malpractice claim). Ultimately, the burden remains on Plaintiff to prove his claim against Defendants. After considering all relevant factors, the Court does not find that Plaintiff's failure to disclose and join Defendants in the prior state action substantially prejudiced Defendants' ability to maintain an adequate defense. Therefore, Defendant's request for summary judgment on the basis of New Jersey's Entire Controversy doctrine will be denied.

   2. *Inadequate Pleading*

Because Plaintiff's claims are not barred under the Entire Controversy Doctrine, the Court will proceed to evaluate Defendants' remaining arguments for dismissal of Plaintiff's claims due to insufficient pleading.

   a. <u>Tortious Interference and Vicarious Liability</u>

Defendants argue that Plaintiff failed to properly plead his tortious interference with a prospective business relation and economic advantage claim because Plaintiff did not include or identify facts supporting the existence of a contract between Plaintiff and patients at the wound

9

care center.  To assert such a tortious interference claim, a plaintiff must allege: "(1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages."  *Varrallo v. Hammond Inc.*, 94. F.3d 842, 848 (3d Cir. 1996) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (1989)).  "The reasonable expectation requirement does not require a contractual right," because the tort of intentional interference with a prospective economic relationship is distinct from the tort of interference with the performance of a contract.  *Id.*, *Printing Mart-Morristown*, 116 N.J. at 750.  Here, the Complaint alleges that (1) Plaintiff and his staff regularly treated patients at the wound care center pursuant to a contract; (2) after Dr. Plishchuk was fired, Barry prevented Plaintiff from treating patients at the wound care center; and (3) as a result, Plaintiff was deprived of revenue from these patients.  However, Plaintiff has provided no factual allegations to support his bare, conclusory claim of a reasonable expectation of economic advantage arising from a contract.  Therefore, Plaintiff's tortious interference claim in Count I will be dismissed without prejudice.

Defendants further assert that Count II of the Complaint, alleging RestorixHealth's vicarious liability, fails because Plaintiff has not pled any facts to indicate that Barry committed tortious interference within the scope of his employment with RestorixHealth.  Under New Jersey law, an employer may be held vicariously liable for the torts committed by its employee within the scope of employment.  *Carter v. Reynolds*, 175 N.J. 402, 408–09 (2003).  To determine whether the employee's acts were within the scope of employment, New Jersey relies on the Restatement (Second) of Agency §§ 228 and 229.  *Id.* at 411–12.  Under the Restatement, an employee's conduct falls within the scope of employment if:

    (a) it is of the kind he is employed to perform;
    (b) it occurs substantially within the authorized time and space limits;

   (c) it is actuated, at least in part, by a purpose to serve the master [. . .]

Restatement (Second) of Agency § 228.  Moreover, "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id*.  Section 229 of the Restatement lists additional factors to consider in determining the scope of employment.

   Here, Plaintiff alleges that Barry tortiously interfered with Plaintiff's economic relationships by preventing Plaintiff and his associates from treating patients at the wound care center.  However, Plaintiff has failed to properly plead his tortious interference claim.  Moreover, besides identifying Barry as a "Regional Director" of RestorixHealth, the Complaint does not specify what Barry's duties were at the wound care center and provides no factual allegations to support an inference that Barry was acting within the scope of his employment when he allegedly committed tortious interference.  Accordingly, Count II of the Complaint will be dismissed without prejudice.

   b. <u>Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing</u>

   Defendants assert that Plaintiff failed to properly plead his breach of contract claim because the Complaint did not contain any facts that would allow the Court to discern the terms of the alleged contract between Plaintiff and RestorixHealth.  To state a breach of contract claim, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).  Furthermore, "[i]t is axiomatic that contract-based claims that do not adequately identify the contract at issue fail to 'set forth fair notice' of a claim and the 'grounds upon which it rests' and do not 'raise a right to relief above the speculative level." *In re Samsung DLP Television Class*

11

*Action Litig.*, No. 07-2141, 2009 WL 3584352, at *6 (D.N.J. Oct. 27, 2009) (quoting *Twombly*, 550 U.S. at 555).

Here the Complaint alleges that a contract existed between the parties but failed to identify any terms of such a contract, as well as any written, oral, or other representations or actions that could support a contract. Plaintiff did not specify how Defendants failed to perform their obligations under the alleged contract and whether Plaintiff has performed his own contractual obligations. Therefore, the court will dismiss without prejudice Plaintiff's breach of contract claim, Count III. *See Ctr. for Special Procedures v. Ct Gen. life Ins. Co.*, No. 09-6566 MLC, 2010 WL 5068164, at *5-6 (D.N.J. Dec. 6, 2010); *Mitchell v. C & S Wholesale Grocers, Inc.*, No. 10-2354 (JLL), 2010 WL 2735655, at *6 (D.N.J. July 8, 2010); *Ferraioli v. City of Hackensack Police Dep't.*, No. 09-2663 (SRC), 2010 WL 421098, at *12 (D.N.J. Feb. 2, 2010); *LM Ins. Corp. v. All-Ply Roofing Co.*, No. 14-04723, 2015 WL 333469, at *5 (D.N.J. Jan. 23, 2015).

Defendants also allege that Plaintiff failed to properly plead a claim for breach of the implied covenant of good faith and fair dealing because such a claim requires a contract and an injury that is distinct from a contract breach. Every contract in New Jersey has an implied covenant of good faith and fair dealing that prevents a party to a contract from injuring the right of the other party to receive the fruits of the agreement. *See Grygorcewicz v. Schweitzer-Mauduit Int'l Inc.*, No. 08-4370 FLW, 2009 WL 235623, at *2 (D.N.J. Jan. 30, 2009); *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). "It is axiomatic that a contract must exist between two parties before a court will infer this covenant." *Grygorcewicz*, 2009 WL 235623, at *2; *see also Wade v. Kessler*, 172 N.J. 327, 345 (2002). New Jersey courts have applied the covenant of good faith and fair dealing in three general ways: (1) to permit the inclusion of terms

and conditions not expressly set forth in a written contract; (2) to provide redress for the bad faith performance of an agreement even where a defendant has not breached an express contractual term; and (3) to assess a party's exercise of discretion expressly granted by a contractual term.  *See Kurnik v. Cooper Health Sys.*, No. A-4686-06T1, 2008 WL 2829963, at *21 (N.J. Super. Ct. App. Div. July 24, 2008).  Breach of the implied covenant occurs where a party acts with ill motives to destroy the reasonable expectations of another contracting party.  *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 2010, 226 (2005).  In addition, the conduct alleged to be a breach of the implied covenant of good faith and fair dealing must be distinct from the conduct alleged to constitute a breach of contract.  *See, e.g.*, *Kurnik*, 2008 WL 2829963 at *24 ("[W]e find that the trial judge below erred in charging the jury on both breach of an express contract provision and breach of the implied covenant of good faith and fair dealing, where the two breaches arose from the identical conduct."); *Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228, 239 (D.N.J. 2011) (dismissing a breach of covenant claim where it is duplicative of the breach of contract claim); *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355 RBK/JS, 2013 WL 6048720, at *3 ("A breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action.") (citing *Wade*, 172 N.J. at 344–45).

      As explained above, Plaintiff has not properly pleaded the existence of a contract with RestorixHealth.  In addition, Plaintiff has not identified any allegedly unlawful conduct of Defendants that is distinct from a potential contract breach.  Therefore, the Court will dismiss without prejudice Count IV, breach of the implied covenant of good faith and fair dealing.

c.  Conversion of Good Will and Conversion of Funds

Defendants assert that Count V, conversion of Plaintiff's good will, must be dismissed because under New Jersey law, the tort of conversion is limited to tangible property.  Conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *LaPlace v. Briere*, 404 N.J. Super. 585, 595 (App. Div. 2009) (internal citations omitted).  "The elements of common law conversion under New Jersey law are (1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Adami v. Cardo Windows, Inc.*, No 12-2804 JBS/JS, 2014 WL 2586933, at *15 (D.N.J. June 10, 2014).

Here, the Complaint alleges that Defendants unlawfully converted Plaintiff's good will by preventing him and his associates from continuing to see patients at the wound care center some time after Dr. Plishchuk was fired.  Although the New Jersey Supreme Court has not explicitly ruled whether conversion applies to intangibles such as good will, the Court is persuaded by previous rulings in this district and authority in other districts that a claim of conversion does not extend to intangible good will.  *See LaPlace*, 404 N.J. Super. at 595 (defining conversion as an unauthorized right of ownership "over goods or personal chattels"); *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 454 (App. Div. 2009) (explaining that the Second Restatement of Torts defines conversion as "an intentional exercise of dominion or control over a chattel"); *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. 06-2256, 2007 WL 2459349, at *12 (D.N.J. Aug. 24, 2007) (citing New Jersey federal district cases finding that "[t]he tort [] of conversion . . . relate[s] to interference with tangible rather than intangible property"); *Regent Nat'l Bank v. K-C Ins. Premium Fin. Co.*, No. 96-8615, 1997 WL 710945, at

\*3 n. 3 (E.D. Pa. Nov. 13, 1997) (declining to extend conversion to good will and noting that "Florida stands alone as a jurisdiction that may recognize an action for conversion of the good will of a business."). Accordingly, Plaintiff's Count V will be dismissed with prejudice.

Lastly, Defendants argue that Plaintiff's claim of conversion of funds, Count VI, must be dismissed for failure to plead all required elements. In order to assert the tort of conversion of funds, "the money converted by a tortfeasor must have belonged to the injured party." *See Scholes Elec. & Commc'ns, Inc. v. Fraser*, No. 04-3898 (JAP), 2006 WL 1644920, at \*4 (D.N.J. June 14, 2006). Where money is the subject of a conversion claim, a plaintiff must show more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion. *Id*. at \*5. Specifically, "the plaintiff must show that the money in question was identifiably the plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff's benefit." *Id*. (collecting cases). Here, Plaintiff's Complaint fails to properly allege these required elements. Therefore, Count VI will be dismissed without prejudice.

## CONCLUSION

For the reasons above, Defendants' Motion to Dismiss will be granted in part and denied in part. Defendants' Motion will be denied with respect to judgment based on New Jersey's Entire Controversy Doctrine. Defendants' Motion will be granted with prejudice on Count V, conversion of good will, and granted without prejudice as to remaining Counts I, II, III, IV, and VI. In addition, Plaintiff will be granted leave to file an amended complaint within thirty days if he is able to correct the deficiencies outlined above. An appropriate Order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.