NOT FOR PUBLICATION

RECEIVED

MAY 18 2015

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMES C. RICKETTI, D.P.M.,

Plaintiff,

v.

SHAWN P. BARRY, et al.,

Defendants.

Civ. No. 13-6804

**OPINION**

THOMPSON, U.S.D.J.

This matter comes before the Court upon the Motion of Defendants Shawn P. Barry and RestorixHealth, Inc. (collectively "Defendants") to Dismiss the Amended Complaint of Plaintiff James C. Ricketti. (Doc. No. 28). Plaintiff opposes. (Doc. No. 29). The Court has decided the Motion based on the parties' written submissions and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, Defendants' Motion will be granted.

BACKGROUND

Plaintiff's Amended Complaint alleges the following facts. Plaintiff is a New Jersey podiatrist who owns his own practice. In 2009 the Robert Wood Johnson University Hospital in Hamilton contemplated opening a wound care center. Plaintiff was interested in the therapies to be offered at the center and participated in the facility early on. When the wound care center started accepting patients on April 21, 2010, Plaintiff was assigned two Tuesday slots to treat patients at the center. At some point Plaintiff was given an additional Monday slot. Plaintiff's patients at the wound care center included both patients from his own practice as well as hospital patients, some of whom subsequently became patients of Plaintiff's own practice. For two years,

1

Plaintiff or his designated employee treated patients in the Monday and Tuesday slots at the wound care center.

In 2008 Plaintiff hired Dr. Michael Plishchuk as an associate podiatrist and often sent him to treat patients at the wound care center. Thus, slots on the wound care center's schedule were listed under both Plaintiff's and Dr. Plishchuk's name. However, Plaintiff alleges that at all times the slots were maintained for Plaintiff's practice and that Dr. Plishchuk treated patients at the wound care center during these slots solely as Plaintiff's employee. In July 2012 Plaintiff fired Dr. Plishchuk. After the discharge, Plaintiff claims that Dr. Plishchuk continued to rehabilitate Plaintiff's patients at the wound care center, depriving Plaintiff of revenue to which he was entitled.

At all relevant times Defendant Barry was the manager of the wound care center, responsible for its day-to-day operations, and its official spokesperson. According to Plaintiff, Barry was aware that the wound care center's Monday and Tuesday slots were assigned to Plaintiff, that Dr. Plishchuk treated patients solely as Plaintiff's employee, and that Plaintiff fired Dr. Plishchuk. In addition, after Dr. Plishchuk was fired, Plaintiff hired another associate podiatrist, Dr. Hoyt, to fill in Plaintiff's Monday and Tuesday slots at the wound care center. Plaintiff alleges that Barry interfered with and delayed Dr. Hoyt's authorization to work there and failed to re-assign both Monday and Tuesday slots to Dr. Hoyt. Instead, Dr. Plishchuk retained one of the slots, and Barry did not assign any patients to Dr. Hoyt's slot even though Barry was supposedly aware that Dr. Hoyt was Dr. Plishchuk's replacement. Ultimately Barry informed Plaintiff that he and his associates could no longer see patients at the wound care center because they did not have a sufficient number of patients. Plaintiff claims that Barry's actions prevented Plaintiff from continuing to treat his patients at the wound care center.

In July 2012 Plaintiff sued Dr. Plishchuk in New Jersey state court but did not join Barry or RestorixHealth in the action. Plaintiff and Dr. Plishchuk settled in May 2013. Subsequently in September 2013 Plaintiff filed the present suit against Defendants, but this Court granted Defendants' Motion to Dismiss on the basis of the Entire Controversy Doctrine. Plaintiff appealed, and the Third Circuit vacated and remanded this Court's ruling with respect to the Entire Controversy Doctrine. Upon remand, Defendants re-filed their Motion to Dismiss, which this Court granted without prejudice on March 9, 2015. (Doc. No. 25). Plaintiff filed an Amended Complaint on April 7, 2015 asserting four counts: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) tortious interference with an economic advantage, and (4) vicarious liability.

## DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) motions to dismiss test the sufficiency of the complaint, and the defendant bears the burden of showing that no claim has been asserted. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005). In assessing such motions, the court conducts a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff but may disregard legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Third, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Bare allegations of entitlement to

3

relief and demonstrations of a "mere possibility of misconduct" are insufficient; rather, the facts must allow a court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id.* at 210–11 (quoting *Iqbal*, 556 U.S. at 678–79).

B. Analysis

    i. <u>*Contract claims*</u>

To state a breach of contract claim, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). In express contracts, parties have stated their terms; in implied contracts the parties' have not stated their terms, and instead, the agreement is manifested by the parties' conduct. *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004) (citing *In re Penn. Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987) ("An implied-in-fact contract, therefore, is a true contract arising from mutual agreement and intent to promise, but in circumstances in which the agreement and promise have not been verbally expressed. The agreement is rather inferred from the conduct of the parties.")). "A contract arises from offer and acceptance, and must be sufficiently definite so that the performance to be rendered by each party can be ascertained with reasonable certainty." *Id.* at 618–19 (quoting *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992)).

Here, the Amended Complaint fails to sufficiently plead a breach of contract. Plaintiff has not provided any facts for the court to reasonably infer the existence of an implied-in-fact contract. All that Plaintiff offers is the fact that for two years Defendants assigned Plaintiff Monday and Tuesday slots for patients at the wound care center. However, a mutually beneficial arrangement, standing alone, is not a legally binding contract. Plaintiff has alleged no oral or

written offers, promises, or statements of intent by Defendants to enter into any binding agreement. *See Estate of Harold Oshinsky v. N.Y. Football Giants, Inc.*, No. 09-01186 PGS, 2011 WL 383880, at *7 (D.N.J. Feb. 2, 2011) ("In New Jersey, to determine whether an implied contract exists depends on mutual agreement and intent to promise, established by objective proofs."); *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-2775 JBS/JS, 2012 WL 762498, at *10 (D.N.J. Mar. 6, 2012) (denying plaintiff leave to assert a breach of an implied contract claim in an amended complaint where, among other things, "the complaint does not identify a specific oral representation which supports an implied contract"); *Alampi v. Pegasus Grp., LLC*, No. A-2638-06T5, 2008 WL 140952, at *6 (N.J. Super. Ct. App. Div. Jan. 16, 2008) (dismissing without prejudice plaintiff's breach of an implied-in-fact contract in part because the defendants "never gave any objective indication that they intended to enter into a partnership with [the plaintiff].").

In addition, it is unclear at which point in time the parties would have entered into any binding agreement. It appears that initially when the wound care center began seeing patients, Plaintiff was only assigned to a Tuesday slot; the additional Monday slot was provided later. But Plaintiff claims that the implied contract included both Monday and Tuesday slots. Furthermore, it is worth noting that the parties are licensed medical professionals and medical providers sophisticated enough to unambiguously formalize their business relationship if they so chose. At this point, accepting all of Plaintiff's well-pleaded facts as true and drawing all reasonable inferences in his favor, Plaintiff has not pled sufficient facts to plausibly establish the existence of any enforceable agreement between the parties. Therefore, Plaintiff's breach of contract claim must be dismissed. In addition, because Plaintiff has not adequately alleged the existence of a contract, Plaintiff's breach of the implied covenant of good faith and fair dealing claim will be

dismissed as well. *See Grygorcewicz v. Schweitzer-Mauduit Int'l Inc.*, No. 08-4370 FLW, 2009 WL 235623, at *2 (D.N.J. Jan. 30, 2009) ("It is axiomatic that a contract must exist between two parties before a court will infer this covenant."); *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001).

### ii. *Tortious interference claims*

To establish a claim of tortious interference with a prospective economic advantage, a plaintiff must allege: "(1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Varrallo v. Hammond Inc.*, 94 F.3d 842, 484 (3d Cir. 1996) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (1989)). "The reasonable expectation requirement does not require a contractual right." *Id.* However, "mere hope that the plaintiff would have entered into some future arrangement with the prospective customer is not sufficient." *Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1223 (FLW), 2013 WL 3772724, at *3 (D.N.J. July 17, 2013).

Here, the Amended Complaint alleges that Plaintiff has express or implied contracts with his patients and that Barry, having knowledge of such contracts, prevented Plaintiff from treating these patients after Dr. Plishchuk was fired. However, Plaintiff has provided no specific facts to support his claim of a reasonable expectation of revenue from these patients based on a contract or otherwise. Plaintiff has pleaded no facts to indicate that such patients "belonged" to him as opposed to the hospital or the wound center.[1] Plaintiff has pleaded no facts to suggest that such patients were required or committed to be treated at the wound care center specifically by

---

[1] Plaintiff only asserts generally that patients he saw at the wound care center included those from his own practice as well as those from the hospital. (Doc. No. 26 at para. 16).

6

Plaintiff or his employee before Barry allegedly intervened. In short, the Amended Complaint fails to set forth a sufficient factual basis for the court to plausibly infer a reasonable expectation of economic advantage to Plaintiff from the wound care center's Monday and Tuesday patients. Accordingly, Plaintiff's tortious interference claim will be dismissed. In addition, in the absence of an underlying tort by an employee there can be no vicarious liability on the part of the employer. *See Carter v. Reynolds*, 175 N.J. 402, 409 (2003) (vicarious liability requires a plaintiff to prove "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment."). Therefore, Plaintiff's vicarious liability claim must be dismissed as well.

## CONCLUSION

For the reasons above, Defendants' Motion to Dismiss Plaintiff's Amended Complaint will be granted. However, the Court will permit Plaintiff one final opportunity to re-plead his claims. To the extent that Plaintiff can correct the deficiencies outlined above, he may re-file a further amended complaint within 30 days.

ANNE E. THOMPSON, U.S.D.J.